DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:   SAMUEL DOLINGER
      TOMOKO ONOZAWA
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2677/2721
samuel.dolinger@usdoj.gov
tomoko.onozawa@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-v-<br><br>WESTCHESTER JOINT WATER WORKS, TOWN/VILLAGE OF HARRISON, VILLAGE OF MAMARONECK, and TOWN OF MAMARONECK,<br><br>Defendants. | 24 Civ. 4783<br><br>**COMPLAINT** |

Plaintiff the United States of America ("United States"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, acting on behalf of the United States Environmental Protection Agency ("EPA"), alleges upon information and belief for its complaint against Westchester Joint Water Works ("WJWW") and the Town/Village of Harrison, the Village of Mamaroneck, and the Town of Mamaroneck (the "Municipal Defendants" and, with WJWW, "Defendants") as follows:

## INTRODUCTION

1. WJWW and the Municipal Defendants have failed to ensure that the drinking water they supply to approximately 120,000 Westchester County residents complies with federal limits on potentially cancer-causing disinfection byproducts resulting from water treatment.

2. During the first, second, and third quarters of 2019, Defendants violated the federal Safe Drinking Water Act ("SDWA") by supplying water exceeding the federal maximum contaminant level ("MCL") for five regulated disinfection byproducts known as haloacetic acids (collectively referred to as "HAA5"). Although Defendants have taken certain short-term measures to mitigate risk, they have failed to implement necessary corrective actions—including building a filtration plant required by an EPA administrative order—to ensure long-term protection of the 120,000 residents of Westchester County, New York, who drink water provided by Defendants.

3. Ensuring compliance with the Safe Drinking Water Act is not only a public health necessity but also a matter of environmental justice. At least one of the municipalities relying on Defendants' drinking water is overburdened and underserved, already facing disproportionate environmental and other burdens.

4. The United States brings this civil action pursuant to sections 1414(b) and (g) of the SDWA, 42 U.S.C. § 300g-3(b) and (g), for an injunction compelling Defendants to comply with the SDWA, its implementing regulations, and EPA's administrative order, and for civil monetary penalties.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendants' principal place of business is located in this district.

## PARTIES

7. Plaintiff is the United States of America.

8. Defendant WJWW is a public benefit corporation formed under New York law. *See* N.Y. Unconsol. Laws § 6121 *et seq.* WJWW owns and operates a water system (the "WJWW Water System") that directly or indirectly supplies drinking water to approximately 120,000 Westchester County residents. WJWW is a person and supplier of water, as defined in 42 U.S.C. § 300f(5), (12), and 40 C.F.R. § 141.2.

9. The Municipal Defendants—the Town/Village of Harrison, the Village of Mamaroneck, and the Town of Mamaroneck—are local governments in Westchester County. Each exercises management and control over WJWW and the WJWW Water System, including through the WJWW Board of Trustees, on which each Municipal Defendant sits. *See* N.Y. Unconsol. Laws §§ 6123, 6124(2). Each Municipal Defendant owns a portion of the WJWW Water System within its municipality. *Id.* § 6124(2); *see* Westchester Joint Water Works, Rules / Regulations, https://www.wjww.com/rules-regulations (last visited June 24, 2024). Each Municipal Defendant is a person and supplier of water, as defined in 42 U.S.C. § 300f(5), (12), and 40 C.F.R. § 141.2, and each is an owner and/or operator of the WJWW Water System.

## REGULATORY BACKGROUND:
## THE SAFE DRINKING WATER ACT AND THE STAGE 2 DBPR

### A. The Safe Drinking Water Act and Public Water Systems

10. "[S]afe drinking water is essential to the protection of public health." Safe Drinking Water Act Amendments of 1996, Pub. L. No. 104-182, § 3(1), 110 Stat. 1613, 1614,

codified at 42 U.S.C. § 300f note. The SDWA and its implementing regulations achieve this protection by setting national health-based standards relating to contaminants that may be found in drinking water. *See generally* 42 U.S.C. § 300g *et seq.*; 40 C.F.R. Part 141; *see also* EPA, *Understanding the Safe Drinking Water Act* (June 2004), https://www.epa.gov/sites/default/files/2015-04/documents/epa816f04030.pdf. These standards include "Maximum Contaminant Levels," or MCLs. An MCL is the "maximum permissible level of a contaminant in water which is delivered to any user of a public water system." 40 C.F.R. § 141.2; *see generally* 40 C.F.R. Part 141, Subparts B & G.

11.  In general, MCLs apply to—and must be met by—"public water systems." A public water system is "a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals." 42 U.S.C. § 300f(4)(A); *see* 40 C.F.R. § 141.2. In some instances, an MCL's applicability depends on whether a public water system is also a "community water system," which is "a public water system that . . . serves at least 15 service connections used by year-round residents of the area served by the system; or . . . regularly serves at least 25 year-round residents." 42 U.S.C. § 300f(15); *see* 40 C.F.R. § 141.2.

**B.   The Stage 2 Disinfectants and Disinfection Byproducts Rule; MCL for Disinfection Byproducts**

12.  Public water systems across the United States use disinfectants such as chlorine to kill disease-causing microbes in drinking water. Stage 2 Disinfectants and Disinfection Byproducts Rule ("Stage 2 DBPR"), 71 Fed. Reg. 388, 394 (Jan. 4, 2006). During that necessary disinfection process, organic and inorganic material in source waters can combine with chlorine and certain other chemical disinfectants to form chemicals referred to as "disinfection

byproducts." *Id.* Since the mid-1980s, epidemiological studies have supported a potential association between disinfection byproduct exposure and bladder cancer, and suggested an association with colon and rectal cancers. *Id.* Additionally, EPA has concluded that the data supported a potential health concern that exposure to chlorinated drinking water or disinfection byproducts may cause adverse developmental or reproductive health effects. *See id.* at 394-407.

13. In 2006, EPA promulgated the Stage 2 DBPR pursuant to the SDWA to provide "increased protection against the potential risks for cancer and reproductive and developmental health effects associated with disinfection byproducts." Stage 2 DBPR, 71 Fed. Reg. at 388. Among other things, the Stage 2 DBPR confirmed the preexisting MCL for the five regulated disinfection byproducts known as HAA5 at the level of 0.060 mg/L, but imposed a more rigorous methodology for determining whether public water systems were complying with MCL requirements throughout their distribution systems. 71 Fed. Reg. at 410-12; 40 C.F.R. §§ 141.64(b)(2), 141.620. These requirements apply, *inter alia*, to public water systems that are community water systems that use a disinfectant other than ultraviolet light. 40 C.F.R. § 141.620(b); *see also id.* §§ 141.2, 141.64(b).

## THE WJWW WATER SYSTEM

14. The WJWW Water System supplies drinking water directly to approximately 60,000 individuals in the Town/Village of Harrison, the Village of Mamaroneck, and the Town of Mamaroneck, as well as portions of the City of Rye and the City of New Rochelle. The WJWW Water System also indirectly supplies drinking water to an additional approximately 60,000 residents of the Village of Larchmont, the City of Rye, the Village of Rye Brook, and the Village of Port Chester by selling water on a wholesale basis to the Village of Larchmont and a privately-owned water supplier, which in turn directly supply these communities. In total, approximately 120,000 Westchester County residents receive the WJWW Water System's water.

At least one municipality served by WJWW, the Village of Port Chester, is an overburdened and underserved community that is already subject to numerous adverse environmental conditions.

15.     The WJWW Water System is subject to the Stage 2 DBPR.  It is a public water system and a community water system because it provides drinking water to more than fifteen service connections used by year-round residents of the area served by the system, and regularly serves at least twenty-five residents year-round.  42 U.S.C. § 300f(4)(A), (15); 40 C.F.R. § 141.2.  It treats that water with disinfectants other than ultraviolet light.

16.     WJWW and the Municipal Defendants are each owners of the WJWW Water System.  WJWW was established to allow the Municipal Defendants to "jointly acquire, construct, provide, maintain and operate a water works system." N.Y. Unconsol. Laws § 6121.  WJWW owns certain joint components of the WJWW Water System, and each Municipal Defendant owns portions of the WJWW Water System within that municipality.  N.Y. Unconsol. Laws §§ 6124(2), 6135; *see* Westchester Joint Water Works, Rules / Regulations, https://www.wjww.com/rules-regulations (last visited June 24, 2024).

17.     WJWW and the Municipal Defendants are each operators of the WJWW Water System.  WJWW states that it "operates the entire system," both the portions jointly owned by WJWW and the portions owned by the Municipal Defendants.  Westchester Joint Water Works, Rules / Regulations, https://www.wjww.com/rules-regulations (last visited June 24, 2024).  The Municipal Defendants also exercise control over the operations of WJWW and the WJWW Water System, including through each Municipal Defendant's seat on WJWW's Board of Trustees, which under state law has "the power . . . to operate" the water system.  N.Y. Unconsol. Laws § 6124(2).  State law requires the members of the Board of Trustees to be representatives of the Municipal Defendants, *id.* §§ 6123, 6124(5), and expressly provides that

"the board of trustees . . . shall be deemed the agents of the municipalities forming [the] joint water works." N.Y. Unconsol. Laws § 6125(5).

18. The Municipal Defendants directly control WJWW and the WJWW Water System with respect to the WJWW Water System's compliance with the Stage 2 DBPR and the construction of a filtration plant that would achieve compliance. These matters are routinely presented to the Municipal Defendants, via meetings of WJWW's Board of Trustees, for the Municipal Defendants to exercise their direction and control.

### THE WJWW WATER SYSTEM FAILED TO COMPLY WITH FILTRATION REQUIREMENTS, REDUCING ITS CAPACITY TO COMPLY WITH THE STAGE 2 DBPR

19. Because the WJWW Water System obtains source water from surface waters—specifically Rye Lake, the eastern portion of the Kensico Reservoir—it has long been required by federal and state law to provide filtration for its drinking water. 40 C.F.R. Part 141, Subpart H; 10 N.Y.C.R.R. § 5-1.30. The WJWW Water System has been out of compliance with this requirement since 1993.

20. In 2004, a New York court ordered WJWW to build a filtration plant that would be completed and operational by approximately the end of 2007, subject to regulatory approvals. *State of New York v. Westchester Joint Water Works*, Index No. 13364-99 (N.Y. Sup. Ct. Westchester Cty., judgment entered June 9, 2004). WJWW has not complied with the state court order; has not yet built the filtration plant; and to this day still does not provide filtration for its water.

21. Among other problems, failing to perform filtration hinders a public water system's ability to comply with the Stage 2 DBPR. With filtration, a water system has superior control over the disinfection byproduct precursors—the organic and inorganic elements in drinking water that interact with disinfectants to create the byproducts. A lack of filtration

7

compounds the water system's difficulties in achieving compliance with the Stage 2 DBPR's MCLs.

### THE WJWW WATER SYSTEM'S VIOLATIONS OF THE SDWA, THE STAGE 2 DBPR, AND EPA'S NOVEMBER 2019 ADMINISTRATIVE ORDER

22. The WJWW Water System exceeded the MCL for HAA5 in the first, second, and third quarters of 2019, as determined by testing performed by WJWW and reported to EPA.

23. On March 28, 2019, EPA issued a first administrative order to address this non-compliance. This order made findings of the WJWW Water System's non-compliance with the MCL and required WJWW, among other things, to submit a corrective action plan to address the MCL violation during the first quarter of 2019. A copy of this order was sent to the New York State Department of Health ("NYS DOH").

24. On June 7, 2019, WJWW submitted a corrective action plan. The plan identified as a contributing cause of the MCL violation an increase in organic matter in its source water—something that could have been limited or redressed if the WJWW Water System had been performing filtration. WJWW's proposed response actions included implementing programmatic and automated flushing schemes, review and optimization of chlorine treatment, sample collection technique review, additional raw water sampling protocols, and verifying existing HAA5 sampling locations.

25. In a July 11, 2019 letter (copied to the NYS DOH), EPA advised WJWW that the proposed activities were "acceptable interim measures" within the confines of WJWW's existing system. However, EPA also expressed concern that WJWW had not mentioned the longstanding requirement to construct and operate a filtration plant. EPA observed that a filtration plant "would give WJWW more control over removal of disinfection byproduct precursors and better ability to routinely comply with disinfection byproduct MCLs, specifically HAA5." EPA

requested that WJWW submit plans regarding its compliance with its filtration obligations within 30 days.

26. In an August 14, 2019, letter, WJWW responded, explaining that it had been exploring alternatives to filtration and had "recently . . . become committed" to building a filtration plant and commencing filtration. WJWW attached a proposed schedule for this project, known as the Rye Lake Filtration Plant Project. The schedule provided for completion of construction of a filtration plant by September 2024, with construction to commence in January 2022, and various interim steps to occur in 2019, 2020, and 2021.

27. Despite the implementation of interim measures under its corrective action plan, as noted above, WJWW continued to violate the SDWA by exceeding the MCL for HAA5 through the second and third quarters of 2019, demonstrating the need for additional measures to ensure WJWW's long-term compliance with the MCL for HAA5.

28. On November 26, 2019, EPA issued a second administrative order (the "November 2019 Administrative Order") to WJWW to ensure the WJWW Water System's continued compliance with the Stage 2 DBPR, again sending a copy to NYS DOH. The November 2019 Administrative Order incorporated WJWW's proposed interim measures, adopted the Rye Lake Filtration Plant Project schedule submitted by WJWW as a mandatory long-term measure, and imposed certain reporting and monitoring requirements.

29. In particular, as relates to the filtration plant, the November 2019 Administrative Order required site investigation and land acquisition arrangements to be completed by December 31, 2019; commencement of the design of the project and the state environmental review process by January 31, 2020; completion of the state environmental review process and commencement of the permitting phase by October 1, 2020; commencement of the construction

phase by January 1, 2022; completion of construction and commencement of the testing and commissioning phase by July 1, 2024; completion of the testing and commissioning phase by October 1, 2024; and certification of the completion of the Rye Lake Filtration Plant Project by October 15, 2024.

30. Notwithstanding the November 2019 Administrative Order, WJWW has repeatedly reported to EPA that the planning and construction for the filtration plant has been delayed. In July 2020, WJWW stated that it anticipated a minimum six-month delay "due to COVID-19 pandemic delays in general, and delay in confirmation of land acquisition arrangements." In October 2020, WJWW reported the environmental review process was "stalled" and "delayed indefinitely" because of actions taken by the Town/Village of Harrison's Planning Board during the state environmental review process. The state environmental review process subsequently restarted and was ultimately completed in October 2022—years after the deadlines for the completion of that process in EPA's November 2019 Administrative Order, which required state environmental review to be completed and permitting to be commenced by October 2020. WJWW remains materially out of compliance today with the November 2019 Administrative Order, which required the construction of the filtration plant to commence by January 1, 2022; even now, WJWW has not yet commenced construction.

31. The WJWW Water System is 30 years overdue in commencing filtration required by federal and state law, and it is nearing two decades overdue in complying with a state court judgment ordering it to institute filtration. It is now two years behind in complying with EPA's November 2019 Administrative Order's mandate to do the same. Defendants have failed to cause the WJWW Water System to become compliant with these legal requirements. As a result, the WJWW Water System's consumers face an increased risk that the water they drink may

contain unsafe levels of potentially cancer-causing disinfection byproducts. Judicial relief is required to ensure the long-term protection of the 120,000 Westchester County residents served by the WJWW Water System.

## SDWA ENFORCEMENT

32. EPA has primary enforcement responsibility over the Stage 2 DBPR, unlike other SDWA regulations for which New York State has an approved program and "primacy." EPA has notified an "appropriate local elected official" of this action. 42 U.S.C. § 300g-3(a).

33. This Court has jurisdiction to "require compliance" with any "applicable requirement" under the SDWA—a term that includes MCLs—and with any administrative order issued by EPA. 42 U.S.C. § 300g-3(b), (i). The Court may "enter . . . such judgment as protection of public health may require." 42 U.S.C. § 300g-3(b).

34. Violators of applicable requirements and administrative orders are liable for a civil penalty in an amount to be set by the Court, up to $69,733 per violation per day, for violations occurring after November 2, 2015. 42 U.S.C. § 300g-3(b); 40 C.F.R. § 19.4 (increasing penalty amount for inflation pursuant to applicable statutes), as amended by 88 Fed. Reg. 89,309 (Dec. 27, 2023).

## FIRST CLAIM FOR RELIEF:
## VIOLATION OF THE SDWA AND THE STAGE 2 DBPR

35. The allegations of paragraphs 1 through 34 are incorporated by reference as though set forth fully herein.

36. The WJWW Water System failed to maintain compliance with the MCL for HAA5 in the first, second, and third quarters of 2019, thereby violating applicable requirements of the SDWA and its implementing regulations, including the Stage 2 DBPR.

37. Each Defendant is an owner and/or operator of the WJWW Water System.

38. Protection of the public health requires the entry of injunctive relief against each Defendant compelling compliance with the SDWA and the Stage 2 DBPR, including an order compelling construction and operation of a filtration plant to prevent further violations of the statute and its implementing regulations.

39. Each Defendant is a "violator" of the SDWA within the meaning of 42 U.S.C. § 300g-3(b), and is therefore liable for civil penalties not to exceed $69,733 per violation per day, for violations occurring after November 2, 2015. 42 U.S.C. § 300g-3(b); 40 C.F.R. § 19.4, as amended by 88 Fed. Reg. 89,309 (Dec. 27, 2023).

## SECOND CLAIM FOR RELIEF:
## VIOLATION OF EPA'S NOVEMBER 2019 ADMINISTRATIVE ORDER

40. The allegations of paragraphs 1 through 39 are incorporated by reference as through set forth fully herein.

41. Defendant WJWW is the respondent named in the November 2019 Administrative Order.

42. The Municipal Defendants are members of WJWW's Board of Trustees with authority to control WJWW's conduct with respect to the November 2019 Administrative Order, including the authority to compel it to comply.

43. Defendant WJWW has violated and continues to violate EPA's November 2019 Administrative Order by failing to maintain the required schedule for building the Rye Lake Filtration Plant.

44. The Municipal Defendants have permitted WJWW to violate the November 2019 Administrative Order and have failed to cause WJWW to comply.

45. Protection of the public health requires the entry of injunctive relief against each Defendant to compel compliance with the November 2019 Administrative Order.

46. Each Defendant is a "violator" of the November 2019 Administrative Order within the meaning of 42 U.S.C. § 300g-3(b), and is therefore liable for civil penalties not to exceed $69,733 per violation per day, for violations occurring after November 2, 2015. 42 U.S.C. § 300g-3(b); 40 C.F.R. § 19.4, as amended by 88 Fed. Reg. 89,309 (Dec. 27, 2023).

## RELIEF REQUESTED

WHEREFORE, the United States of America respectfully requests that this Court:

(a) enjoin Defendants from violating the SDWA and its implementing regulations, including but not limited to the Stage 2 DBPR;

(b) order Defendants to put in place and/or continue measures ensuring both short-term and long-term compliance with the SDWA and the Stage 2 DBPR, including by constructing a filtration plant;

(c) order WJWW to comply by dates certain, and the Municipal Defendants to cause WJWW to comply by dates certain, with EPA's November 2019 Administrative Order;

(d) order Defendants to perform such interim measures and mitigation as equity requires;

(e) order Defendants to pay civil penalties as described herein;

(f) award the United States its costs in this action; and

(g) grant such other and further relief as the Court deems just and appropriate.

Dated: June 24, 2024
    New York, New York

                                     DAMIAN WILLIAMS
                                     United States Attorney for the
                                     Southern District of New York

By:        _____
                                     SAMUEL DOLINGER
                                     TOMOKO ONOZAWA
                                     Assistant United States Attorneys
                                     86 Chambers Street, 3rd Floor
                                     New York, New York 10007
                                     Tel.: (212) 637-2677/2721
                                     samuel.dolinger@usdoj.gov
                                     tomoko.onozawa@usdoj.gov